IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| A COMMUNICATION COMPANY, INC., *doing business as* Acom Healthcare,<br><br>      Plaintiff,<br><br>    vs.<br><br>PETER M. BONUTTI, BORIS P. BONUTTI, DEAN A. KREMER and UNITY ULTRASONIC FIXATION, LLC,<br><br>      Defendants. | Case No. 13-cv-1193-JPG-SCW |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motion to dismiss (Doc. 16) of defendants Peter M. Bonutti ("Peter"), Boris P. Bonutti ("Boris"), Dean A. Kremer ("Kremer"), and Unity Ultrasonic Fixation, LLC ("Unity") (collectively "Defendants"). Plaintiff A Communication Company, Inc. ("Acom") filed its response (Doc. 26) to which Defendants replied (Doc. 27). For the following reasons, the Court grants in part and denies in part the motion to dismiss.

1. Background

Taking as true all facts alleged in the complaint, the following are the relevant facts. Peter invents, develops, patents, and markets medical technologies and devices through several companies of which he is the majority owner. Peter's brother, Boris, serves as the Chief Operating Officer and Kremer serves as the Chief Financial Officer for several of these companies. In the late 1990's Peter hired Acom to provide marketing and communication services for his various companies. Acom's services included: (1) determining Peter's medical technologies and devices most likely to succeed in the healthcare market; (2) identifying and marketing to companies likely to be interested in Peter's medical technologies and devices; (3)

facilitating contacts of companies interested in Peter's medical technologies and devices; and (4) branding select medical technologies and devices.

After a review of Peter's various medical technologies and devices, Acom advised Peter to develop his patent for ultrasonic fixation technology, a method for closing or sealing surgical sutures. Peter took Acom's advice and created a new company to develop and market the ultrasonic fixation technology. The following represents the parties' agreed upon respective interests in the new company: 62 percent for Peter; 11.6 percent for Boris; 2 percent for Kremer; 17.4 for Avon Equity Holdings, LLC ("Avon")[1]; and 7 percent for Acom. These agreed upon interests were memorialized in a document entitled "General Terms of Understanding, 10/25/02" and in a Consultant Agreement between William F. Shea, LLC, and Bonutti Research, Inc.[2] Acom proceeded to create the new company's name, Unity Ultrasonic Fixation, and logo. In July 2002, the parties created Unity with their agreed upon ownership interests.

From 2002 to 2006, Acom identified and marketed to companies with a potential interest in the ultrasonic fixation technology. One such company with which Acom negotiated was Synthes USA ("Synthes"), a company which ultimately consummated a financially significant transaction with Unity on April 16, 2008. This transaction included an initial payment of $5 million from Synthes to Unity and additional payments for reimbursement of development costs. Future payments from this transaction may potentially result in tens or hundreds of millions of dollars when Synthes takes Unity's product to market. Acom was not compensated for this transaction.

In 2007, after Synthes expressed its interest in the ultrasonic fixation technology, Boris terminated the business relationship with Acom. Boris discharged Acom from its work with

---

[1] William Shea owned Avon Equity Holding, LLC. Shea through his company, William F. Shea, LLC, provided consulting and advisory services to Peter's companies.
[2] Bonutti Research, Inc., is a company of which Peter is a majority owner.

Joint Active Systems, Inc. ("JAS"), a company of which Peter was a majority owner, and asked Acom to turn over the artwork for JAS and Unity. Thereafter, there were no business dealings between Acom and Peter or any of Peter's companies.

A document dated January 15, 2008, entitled "Action by a Majority of the Membership Interest of Unity Ultrasonic Fixation," acknowledged Acom's 7 percent interest in Unity and declared that at the end of 2006 Unity had "permitted" Acom's interest "to be purchased by and issued to Dr. Peter Bonutti in exchange for their net book value, which was $1." The document further declared that (1) "at the beginning of 2007" Acom no longer had an ownership interest in Unity, and (2) Peter's interest in Unity increased from 62 percent to 69 percent. By September 2009, millions of dollars were paid out of Unity, none of which was paid out to Acom or Avon.

Unity's members failed to inform Acom of the purported termination or any reduction in Acom's interest. In fact, Acom did not learn of its termination and Peter's acquisition of Acom's interest until 2013. Defendants furthered their scheme to deprive Acom of its interest by transferring Synthes' money out Unity in various ways, including: (1) paying excessive distributions to or on behalf of Peter and paying nothing to Acom or Avon; (2) paying or reporting excessive illegitimate expenses; and (3) making or approving excessive payments to Peter for his preferred equity for loans made by him or on his behalf.

Acom filed the instant seven-count complaint alleging as follows: (1) Count One – Breach of Fiduciary Duty/Fraud; (2) Count Two – Conversion; (3) Count Three – Aiding and Abetting; (4) Count Four – Civil Conspiracy; (5) Count Five – Declaratory Judgment – Invalidity of Purported Operating Agreement; (6) Count Six – Declaratory Judgment – Inspection of Books and Records; and (7) Count Seven – Action for Accounting. Defendants filed their motion to dismiss arguing that (1) Counts Five and Six, entitled "declaratory judgment – invalidity of

purported operating agreement" and "declaratory judgment – inspection of books and records" do not present judiciable controversies; (2) Count Two fails to state a claim for conversion; (3) Counts Three and Four, aiding and abetting and conspiracy claims, are duplicative of the breach of fiduciary duty claim; (4) Count One, the breach of fiduciary duty claim, fails, to the extent it relies on distributions made more than three years before filing this lawsuit, because of Delaware's statute of repose; and (4) Acom is not entitled to relief under the Illinois Business Corporations Act or the Illinois Limited Liability Company Act. In its response, Acom withdraws Count Five, Count Six and its request that it have access to all of Defendants' books, records and accounts of Unity. Acom objects to the remainder of Defendants' motion to dismiss. The Court will address the contested portions of the motion to dismiss in turn.

2. Analysis

When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Bell Atl.*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Bell Atl.*, 550 U.S. at 556).

4

In *Bell Atlantic*, the Supreme Court rejected the more expansive interpretation of Rule 8(a)(2) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). *Bell Atlantic*, 550 U.S. at 561–63; *Concentra Health Servs.*, 496 F.3d at 777. Now "it is not enough for a complaint to avoid foreclosing possible bases for relief; it must actually suggest that the plaintiff has a right to relief . . . by providing allegations that 'raise a right to relief above the speculative level.'" *Concentra Health Servs.*, 496 F.3d at 777 (quoting *Bell Atl.*, 550 U.S. at 555).

Nevertheless, *Bell Atlantic* did not do away with the liberal federal notice pleading standard. *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). A complaint still need not contain detailed factual allegations, *Bell Atl.*, 550 U.S. at 555, and it remains true that "[a]ny district judge (for that matter, any defendant) tempted to write 'this complaint is deficient because it does not contain . . .' should stop and think: What rule of law *requires* a complaint to contain that allegation?" *Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005) (emphasis in original). Nevertheless, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl.*, 550 U.S. at 555. If the factual detail of a complaint is "so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8," it is subject to dismissal. *Airborne Beepers*, 499 F.3d at 667. With these standards in mind, the Court will first address Acom's conversion claim.

    a. Count Two – Conversion Claim

In Count Two, Acom alleges a conversion claim against defendants Peter, Boris, and Kremer (collectively "the Individual Defendants"). Acom alleges the Individual Defendants

5

converted Acom's 7% ownership interest in Unity and share of member distributions. Defendants argue that the property at issue is not subject to conversion under the law and Acom's conversion claim must be dismissed. In response, Acom argues that the ownership interest is connected to the contract, a tangible document, and thus the conversion claim is appropriate.

Under Illinois law, a plaintiff must allege the following to state a claim for conversion: "(1) a right to the property; (2) an absolute and unconditional right to the immediate possession of the property; (3) a demand for possession; and (4) that the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Van Diest Supply Co. v. Shelby Cnty. State Bank*, 425 F.3d 437, 439 (7th Cir. 2005) (citing *Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998)). "Illinois courts do not recognize an action for conversion of intangible rights." *American Nat. Ins. Co. v. Citibank, N.A.*, 543 F.3d 907, 910 (7th Cir. 2008) (citing *Janes v. First Fed. Sav. & Loan Ass'n*, 397 N.E. 2d 255, 260 (Ill. App. Ct. 1973)). However, intangible property rights may be the subject of a conversion claim when they are connected "to a tangible document, such as 'promissory notes, bonds, bills of exchange, share certificates, and warehouse receipts.'" *Joe Hand Promotions, Inc. v. Lynch*, 822 F. Supp. 2d 803, 808 (N.D. Ill. 2011) (quoting *The Film & Tape Works, Inc. v. Junetwenty Films, Inc.*, 856 N.E.2d 612, 624 (Ill. App. Ct. 2006)). As an Illinois appellate court explained "[t]hese documents all share in common the fact that they are tangible documents containing intangible rights which are easily convertible into tangible assets, not dissimilar to currency." *Film & Tape Works*, 856 N.E.2d at 624.

The Northern District of Illinois examined the tangible requirement in *Joe Hand Promotions, Inc. v. Lynch*. The plaintiff alleged the defendant had broadcast a boxing match

without authorization and thus converted the plaintiff's exclusive right to broadcast the boxing match. 822 F. Supp. 2d at 808. The court concluded that plaintiff could not maintain its conversion claim, noting that plaintiff "cannot directly convert its exclusive right to cash, as with a promissory note or bond." *Id*.

Here, Acom has failed to properly allege a conversion claim under Illinois law. While an ownership interest or share of distributions in a limited liability corporation is undoubtedly valuable personal property, it is not tangible personal property. Unlike promissory notes or share certificates, an ownership interest or share in membership distributions is not intangible property that can be directly converted into cash. Rather, Acom's interest is similar to the exclusive right to broadcast a boxing match examined in *Joe Hand*. Acom's alleged interest is undoubtedly valuable; however, it cannot be directly converted into cash. As such, pursuant to Illinois law, Acom cannot maintain a claim for the conversion of its ownership interest in Unity, and the Court dismisses Acom's conversion claim.

      b. Counts Three and Four – Aiding and Abetting and Conspiracy Claims

In Counts Three and Four, Acom alleges that each of the Individual Defendants aided and abetted in the breaches of fiduciary duty of the other Individual Defendants and conspired to convert Acom's property. Defendants argue these claims are duplicative of Acom's breach of fiduciary duty claim and must be dismissed. In response, Acom argues that the aiding and abetting and conspiracy claims are based on facts different than the breach of fiduciary duty claim and should not be dismissed.

The Court has already determined that Acom has failed to plead a conversion claim. For the same reasons, Acom has necessarily failed to plead a conspiracy to commit conversion claim. Accordingly, the Court dismisses the civil conspiracy claim contained in Count Four.

Next, the Court will address Acom's aiding and abetting claim in Count Three. There is no separate tort of aiding and abetting. *E. Trading Co. v. Refco*, 229 F.3d 617, 623 (7th Cir. 2000). Rather, one who aids and abets in a tort is guilty of the tort itself. *See id.* In the fraud context, the Seventh Circuit explained

> [t]here is nothing to be gained by multiplying the number of torts, and specifically by allowing a tort of aiding and abetting a fraud to emerge by mitosis from the tort of fraud, since it is apparent that one who aids and abets a fraud, in the sense of assisting the fraud and wanting it to succeed, is himself guilty of fraud, *McClellan v. Cantrell*, 217 F.3d 890, 894-95 (7th Cir. 2000); *Cenco, Inc. v. Seidman & Seidman,* 686 F.2d 449, 452-53 (7th Cir. 1982), in just the same way that the criminal law treats an aider and abettor as a principal. Law should be kept as simple as possible. One who aids and abets a fraud is guilty of the tort of fraud (sometimes called deceit); nothing is added by saying that he is guilty of the tort of aiding and abetting as well or instead.

*E. Trading Co.*, 229 F.3d at 623-24.

Here, the aiding and abetting claim is not duplicative of the breach of fiduciary duty claim in the event that one member owed a fiduciary duty and another did not owe a fiduciary duty. If the jury were determine that one of the Individual Defendants did not owe a fiduciary duty, the jury could potentially impose liability under an aiding and abetting theory. As such, the Court will not dismiss Count Three; however, it does note that aiding and abetting is not a separate tort and will only be applicable if one of the Individual Defendants is not a fiduciary. Accordingly, the Court denies Defendants' motion to dismiss Count Three and grants Defendants' motion to dismiss Count Four.

  c. Time-Barred Distributions

Next, Defendants argue that Acom's breach of fiduciary duty claim must be dismissed to the extent it seeks time-barred distributions. Specifically, Defendants argue that, because this case was filed in Illinois, Illinois choice-of-law principles apply. *See CDX Liquidating Trust v. Venrock Assoc.*, 640 F.3d 209, 212 (7th Cir. 2011). Illinois employs the

8

> "internal affairs" doctrine – "a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs – matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders – because otherwise a corporation could be faced with conflicting demands."

*Id*. (quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982)).  As such, Illinois choice-of-law principles "make[] the law applicable to a suit against a director for breach of fiduciary duty that of the state of incorporation." *CDX Liquidating Trust*, 640 F.3d at 212.  Therefore, Defendants reason that Delaware law applies in the instant case.

Defendants cite to the following Delaware law:

> a member who receives a distribution from a limited liability company shall have no liability under this chapter or other applicable law for the amount of the distribution after the expiration of 3 years from the date of the distribution unless an action to recover the distribution from such member is commenced prior to the expiration of the said 3-year period and an adjudication of liability against such member is made in the said action.

Del. Cod. Ann. tit. 6, § 18-607(c).  Based on this statute, Defendants argue Acom's breach of fiduciary duty claim is barred to the extent its claims are based on distributions paid out more than three years prior to the filing of the instant case.  Acom, however, argues that this statute only applies to actions between a limited liability company and its member to recover a distribution.

When interpreting a state's statute, a federal court must employ that state's statutory construction principles.  *See Brownsburg Area Patrons Affecting Change v. Baldwin*, 137 F.3d 503, 507 (7th Cir. 1998).  The primary rule of statutory construction requires the court to ascertain and effectuate the legislature's intent.  *In re Adoption of Swanson*, 623 A.2d 1095, 1096 (Del. 1993).  Where a statute "is unambiguous and there is no reasonable doubt as to the

9

meanings of the words used, the court's role is limited to an application of the literal meaning of those words." *Id*. at 1096-97.

It is instructive to look at the specific words employed by the legislature in Delaware's statute. Subsection (c) specifically references "an action to *recover* the distribution" against a member. Black's Law Dictionary defines the word "recover" in the following ways: (1) "[t]o get back or regain in full or in equivalence"; (2) "[t]o obtain by a judgment or other legal process"; (3) "[t]o obtain (a judgment) in one's favor"; or (4) "[t]o obtain damages or other relief; to succeed in a lawsuit or other legal proceeding." Black's Law Dictionary 1302 (8th ed. 2004). Definition one refers to recovering a specific item. Definitions two through four refer to a legal recovery, such as obtaining a judgment or damages. Here, the first definition is applicable because the statute refers to recovering a specific item – the distributions to the member in violation of the statute. Only the limited liability could "get back or regain in full" the distribution. The member never had the distribution and thus could not make a claim to "get back or regain in full" the distribution. As such, the accepted meaning of the word "recover" in section 18-607(c) indicates this section applies to causes of action between a limited liability company and a member.

When the Court reads subsection (c) in context and views it in its place in the statutory scheme, the Court is further convinced that Delaware's legislature intended subsection (c) to modify the liability set forth in subsection (a) and (b) of Section 18-607. Under statutory construction principles, "words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 666 (2007). Section 18-607 contains three subsections and sets forth limitations on distributions from a limited liability company to a member. Subsection (a) explains that a

limited liability company cannot make a distribution when "at the time of distribution . . . all liabilities of the limited liability company . . . exceed the fair value of the assets of the limited liability company . . . ." Del. Cod. Ann. tit. 6, § 18-607(a). Section (b) explains that any member who receives a distribution knowing that the distribution was in violation of subsection (a) shall be liable to the limited liability company for the amount of the distribution. Del. Cod. Ann. tit. 6, § 18-607(b). Section (b) further explains that where the member does not know the distribution was made in violation of subsection (a) the member is not liable for the amount of the distribution. *Id*. Subsection (c) sets forth the statute of repose stating that "a member who receives a distribution from a limited liability company shall have no liability under this chapter or other applicable law for the amount of the distribution after the expiration of 3 years from the date of the distribution . . . ." Del. Cod. Ann. tit. 6, § 18-607(c).

Considering the context and topics addressed in subsections (a) and (b), section 18-607 as a whole is meant to address distributions made from a limited liability company to a member while the limited liability company is insolvent. It was not intended to address all possible causes of action against a member of the limited liability company. Thus, based on subsection (c)'s preceding subsections, the context makes it clear that subsection (c) limits the liability between the member and the limited liability company seeking to recover a distribution made in violation of subsection (a). Finally, Defendants have cited to no authority supporting their expansive reading of section 18-607(c). Accordingly, if the Court were to find Delaware law was applicable law in this case, section 18-607(c) would not bar Acom's breach of fiduciary duty claim.

Illinois' law similarly places limits on distributions where the distribution would make the limited liability company insolvent. 805 ILCS 180/25-30. Illinois law, like the preceding

Delaware law, creates liability to the limited liability company where the member "knew a distribution was made in violation of Section 25-30." 805 ILCS 180/25-35(a). That Section's statute of repose states that "[a] proceeding under this Section is barred unless it is commenced within 2 years after the distribution." 805 ILCS 180/25-35(d). Thus, this statute of repose clearly applies only to actions brought "under this Section" and does not apply to common law actions. As such, because neither the cited Illinois nor Delaware statute bars Acom's breach of fiduciary duty claim, the Court need not undertake a conflict of law analysis. For the foregoing reasons, the Court denies Defendants' motion to dismiss to the extent it seeks to dismiss Acom's breach of fiduciary duty claim.

3. Conclusion

In conclusion, the Court **GRANTS in part and DENIES in part** Defendants' motion to dismiss (Doc. 16). Specifically, the Court

- **GRANTS** the motion to dismiss to the extent it dismisses the (1) conversion claim pleaded in Count Two, (2) civil conspiracy claim pleaded in Count Four, (3) declaratory judgment claims in Counts Five and Six, and (4) Acom's request for access to Defendants' books, records and accounts of Unity; and
- **DENIES** the motion to dismiss to the extent it declines to dismiss the (1) aiding and abetting claim pleaded in Count Three, and (2) breach of fiduciary duty claim pleaded in Count One.

**IT IS SO ORDERED.**

**DATED:** July 16, 2014

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**